## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MEECHELLE TERRY and BRANDON
TERRY,

       *Plaintiffs,*

 vs.

                                  Case No. 21-cv-1119-EFM

ESURANCE INSURANCE COMPANY,

       *Defendant.*

## MEMORANDUM AND ORDER

The residence of Plaintiffs Meechelle and Brandon Terry was damaged in an accidental fire. That residence was insured under a Policy issued by Defendant Esurance Insurance Company. Defendant made several payments under the Policy but has declined, citing an exclusion under the Policy, to make payments for what it deemed increased costs necessary to comply with building codes. Plaintiffs and Defendant each seek partial summary judgment on this issue. Plaintiff argues that, as a matter of law, the exclusion relied upon by Defendant is void and unenforceable under Kansas law. In the alternative, they contend that the exclusion is not properly applied to their situation as no building codes govern their residence. Defendant urges the Court to arrive at the opposite conclusion for each of these contentions.

Additionally, Defendant seeks partial summary judgment that Plaintiffs cannot recover beyond the policy limits for additional living expenses, and that Brandon Terry's omissions in his personal bankruptcy case require that the doctrine of judicial estoppel be applied to bar his claims. As set out more fully below, the Court grants Plaintiffs' Motion for Partial Summary Judgment (Doc. 68), and grants in part and denies in part Defendant's Motion for Partial Summary Judgment (Doc.66).

## I.       Factual and Procedural Background

Plaintiffs own a house in Kanorado, Sherman County, Kansas.  This house and Plaintiffs' personal property is insured under a Policy issued by Defendant.  The Declarations section of the Policy shows a limit of liability of $274,750 for Dwelling Protection, $164,850 for Personal Property Protection, and $27,475 for Additional Living Expenses.

The Policy states that Defendant "will cover sudden and accidental direct physical loss to property described in Dwelling Protection–Coverage A and Other Structures Protection—Coverage B except as limited or excluded in this policy."[1]  One such exclusion is the following:

> Under Dwelling Protection–Coverage A and Other Structures Protection–Coverage B of this policy, "we" do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions.  Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
>
> 6. Actions taken by civil, governmental or military authorities:
> a) to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or

---

[1] Emphasis removed.

demolition of any "building structure", other structure or land at the "residence premises."[2]

Plaintiffs had the option to purchase coverage "to comply with local building codes after covered loss to the 'dwelling' or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of the 'dwelling.' " They declined to purchase this optional coverage.

Under the section for additional living expenses, the Policy provides for the payment of the reasonable increase in living expense resulting from a loss under Dwelling Protection coverage that makes the residence uninhabitable. Payment for additional living expenses under this section of the Policy is limited to, at most, 12 months after the covered loss.

Plaintiffs experienced a covered loss when their residence was damaged in an accidental fire. To date, Defendant has paid Plaintiffs $89,054.22 under Coverage A–Dwelling Protection, $28,793.49 under Coverage C–Personal Property Protection, and $26,702.11 for Additional Living Expenses. Defendant has denied coverage for a portion of the costs Plaintiffs claim because it believes the estimates Plaintiffs submitted include the increased cost to comply with building codes.

The estimates at issue were prepared by Caid Riggins. Riggins estimate was the result of "damage observed, consequential loss resulting from the proper repair process and strict compliance with applicable codes statutes and laws." The parties agree that Plaintiffs' residence in Sherman County was not subject to any building codes. The estimate did include additional

---

[2] Emphasis removed.

cost to replace four-inch exterior walls and insulation with six-inch framing and insulation, purportedly to comply with the International Energy Conservation Code ("IECC").   Riggins admitted that he did not know whether Sherman County had adopted the IECC.

Plaintiffs filed the instant civil case against Defendant in the District Court of Sherman County, Kansas on March 5, 2021.  Defendant removed the case to this Court on May 3, 2021. Prior to any litigation, Plaintiff Brandon Terry filed for Chapter 13 bankruptcy on June 10, 2020. In the bankruptcy court's order modifying and confirming Chapter 13 plan, the court required Brandon to "timely report to the Trustee any events affecting disposable income which are not projected on Schedules I and J, including, but not limited to, tax refunds, inheritances, prizes, lawsuits, gifts, etc., that are received or receivable during the pendency of the case."

After filing this lawsuit, Brandon's bankruptcy attorney notified the Chapter 13 Trustee in Brandon's case of this lawsuit on May 27, 2021.  The Trustee acknowledged this notification the same day and thereafter entered his appearance in the instant case to monitor the matter.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.[3]   A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[4]  The movant bears the initial burden of proof, though "a movant that will not bear the burden of persuasion at trial

---

[3] Fed. R. Civ. P. 56(a).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

need not negate the nonmovant's claim."[5]  "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[6]  The nonmovant must then bring forth "specific facts showing a genuine issue for trial."[7]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8]  The court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party."[9]

The Court applies this same standard to cross motions for summary judgment.  Each party bears the burden of establishing that no genuine issue of material fact exists and entitlement to judgment as a matter of law.[10]  "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[11]  But where the cross motions overlap, the Court may permissibly address the legal arguments together.[12]  Each motion is viewed in the light most favorable to its nonmoving party.[13]

---

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[6] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp.*, 477 U.S. at 325).

[7] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

[10] *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[11] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citation omitted).

[12] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

[13] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

### III.    Analysis

**A.    Policy Exclusion for Building Code Coverage.**

Both Plaintiffs and Defendant seek partial summary judgment related to the following exclusion under Plaintiffs' policy:

> Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** of this policy, *"we"* do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions.  Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
>
> Actions taken by civil, governmental or military authorities:
> a) to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any *"building structure"*, other structure or land at the *"residence premises."*

Terms and limitations in an insurance policy are generally enforceable according to their plain meaning unless they violate public policy or conflict with statutory requirements.[14]  The interpretation and legal effect of an insurance contract is a question of law to be determined by the Court.[15]

Plaintiffs ask the Court to conclude that this exclusion is void as against public policy under Kansas law.  In the alternative, Plaintiffs contend that this exclusion is inapplicable to their situation as no building codes govern their residence.  Defendant, naturally, urges the opposite conclusions.

---

[14] *See House v. Am. Family Mut. Ins. Co.*, 251 Kan. 419, 837 P.2d 391, 397 (1992).

[15] *Am. Media, Inc. v. Home Indem. Co.*, 232 Kan. 737, 658 P.2d 1015, 1018 (1983) (quoting *Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 449 P.2d 477, 481 (1969)); *see also Gerdes v. Am. Family Mut. Ins. Co.*, 713 F. Supp. 2d 1290, 1295 (D. Kan. 2010).

1.      *The exclusion is void as contrary to public policy under Kansas law.*

Plaintiff relies on the Kansas Court of Appeals decision in *Unified School District No. 285 v. St. Paul Fire and Marine Insurance Co.*[16] for the proposition that the above exclusion is void and unenforceable under Kansas law.  In *USD No. 285*, the plaintiff's school buildings, insured by the defendant, were damaged in a tornado.[17]  The applicable insurance policy contained an exclusion that the insurance company would not be liable for any loss "[o]ccasioned by enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings unless such liability has been specifically assumed under this policy."  The trial court held this exclusion was inapplicable for two reasons.  First, it found that defendant had contractually assumed liability for the cost of replacement required by the Building Code upgrades by insuring the functional use of the buildings as school facilities.[18]  Second, the trial court held that:

> limitations of liability in policies of insurance, such as those under consideration, are void and unenforceable as against public policy inasmuch as those limitations conflict with statutory requirements applicable to the insured's structures which were known, or should have been known, to the defendants at the time the policies were written.[19]

The Court of Appeals affirmed the district court's decision, noting as to the second that while authorities were divided on the enforceability of "limitations of liability concerning building code

---

[16] 6 Kan. App. 2d 244, 245, 627 P.2d 1147(1981), *overruled on other grounds by Thomas v. Am. Fam. Mut. Ins. Co.*, 233 Kan. 775, 666 P.2d 676 (1983).

[17] *USD No. 285*, 627 P.2d at 1149.

[18] *Id.* at 1153.

[19] *Id.*

or similar governmental requirements . . . we find that those holding such limitations unenforceable are the more persuasive."[20]

The Court cannot help but read this statement as Plaintiff does—that is, as a holding that "limitations or liability concerning building code or similar governmental requirements" are unenforceable. The Court of Appeals explicitly noted that it found authorities holding such limitation unenforceable—exactly what is at issue in this case—to be more persuasive. In support of this reading, the Eighth Circuit in *State Auto Property & Casualty Insurance Co. v. Boardwalk Apartments L.C.*,[21] relying on *USD No. 285*, overturned the district court on the ground that it "should have ruled the limitations provision," which provided that the insurer would not reimburse replacement cost due to the enforcement of an ordinance or law, "was void against public policy under Kansas law."[22] The Court has no reason to suspect the Tenth Circuit would follow a different course.

Defendant, in response, makes a rather curious argument. It essentially contends that because no state or local codes apply to Plaintiffs' insured residence, *USD No. 285* does not apply. The Court, however, does not read that case so narrowly. Certainly, the district court decision that preceded *USD No. 285* rested on the fact that the exclusion conflicted with statutory requirements.[23] But the *USD No. 285* court did not limit its holding in the same way as the district court. Instead, the Court of Appeals clearly found "those [authorities] holding such limitations unenforceable [to be] the more persuasive." Nothing in the opinion appears to require that those

---

[20] *Id.* at 1154.

[21] 572 F.3d 511 (8th Cir. 2009).

[22] *Id.* at 518.

[23] *USD No. 285*, 627 P.2d at 1153

limitations in fact conflict with a state or local code in a particular case.[24]  And even if the Court were to accept Defendant's narrow reading of the case, its admission that no codes apply to Plaintiffs' residence wreaks havoc on its contention that the exclusion was properly applied in this case.

        2.    *Even if the exclusion is enforceable under Kansas law, Defendant has not met its burden to show that it properly applies to Plaintiffs' case.*

Several foundational issues require attention before addressing the substance of the building codes exclusion as applied to Plaintiffs' case.  First, Defendant seems to assume that Plaintiffs bear the burden to show that the building codes exclusion does not properly apply to their case.  This gets it backward.  While an insured has "the burden to show the loss falls within a coverage provision . . . the insurer has the burden to prove the loss is excepted or excluded by a specific provision of the policy."[25]  Plaintiffs do not, as Defendant contends, fail to meet their burden by the mere fact that they did not purchase additional coverage offered by Defendant for the cost to make code upgrades.  Rather, it is not seriously disputed that the loss of the residence by accidental fire falls within a coverage provision.  It is then Defendant's burden to prove that the building codes exclusion properly applies to limit Plaintiffs' entitlement under the Policy.

Second, the parties spend a great deal of time discussing whether the exclusion is limited, as Plaintiff contends, to local building codes.  This argument is easily dismissed.  While Plaintiffs cite the optional coverage that they could have purchased to cover the increased cost of replacement due to "local building codes," the exclusion at issue applies to "[a]ctions taken by

---

[24] *Id.* at 1154.

[25] *Shelter Mut. Ins. Co. v. Williams ex rel. Williams*, 248 Kan. 17, 804 P.2d 1374, 1383 (1991), *holding modified by Thomas v. Benchmark Ins. Co.*, 285 Kan. 918, 179 P.3d 421 (2008).

civil, governmental or military authorities . . . to enforce any *any* building codes, ordinances or laws."[26]  "Kansas law requires the court to 'consider the relevant provisions of an insurance policy together, rather than in isolation, and give them effect.' "[27]  Further, these provisions, if clear and unambiguous, should be understood according their plain and ordinary meaning.[28]  Accordingly, the language in the optional coverage provision cited by Plaintiffs, which was not purchased, cannot be read in isolation, and the plain meaning of the exclusion should be given effect—it applies to "[a]ctions taken by civil, governmental or military authorities . . . to enforce *any* building codes, ordinances or laws."[29]

But the burden remains on Defendant to show that this exclusion properly applied to Plaintiffs claim to limit their entitlement under the policy.  Defendant makes almost no attempt to carry this burden.  The parties broadly agree that no building codes, state or local, apply to Plaintiffs' residence.  It beggars belief, then, that the exclusion would apply to Plaintiffs' claim.

The exclusion unambiguously applies to a loss "which consists of, is caused by, or would not have occurred but for . . . *[a]ctions taken* by civil, governmental or military authorities . . . to *enforce* any building codes, ordinances or laws."[30]  This exclusion must be narrowly construed, as the insurer, "having affirmatively expressed coverage through broad promises, assumes the duty to define any limitations on that coverage in clear and explicit terms."[31]

---

[26] Emphasis added.

[27] *Nautilus Ins. Co. v. Heartland Builders, LLC*, 526 F. Supp. 3d 914, 925 (D. Kan. 2021) (quoting *U.S. Specialty Ins. Co. Inc. v. Steele*, 458 F. Supp. 3d 1310, 1315 (D. Kan. 2020)).

[28] *O'Bryan v. Columbia Ins. Grp.*, 274 Kan. 572, 56 P.3d 789, 792 (2002).

[29] Emphasis added.

[30] Emphasis added.

[31] *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213, 1220 (1998) (citation omitted).

Here, there is no evidence that action has been taken by any civil or governmental authorities to enforce any building codes, ordinances, or laws with respect to the reconstruction or repair of Plaintiffs' residence.  Defendant appears to cite a statement by Plaintiffs' damages expert, Caid Riggins, that his estimate for the cost of reconstruction or repair included "strict compliance with applicable codes or statutes."  But again, both parties admit that there are no applicable state or local codes, rendering this statement meaningless.

Defendant's only attempt to *specifically* identify "[a]ctions taken by civil, governmental or military authorities . . . to enforce any building codes, ordinances or laws" is their citation to Riggins' deposition, wherein he mentions that his estimate of the cost of repairs included the cost to replace four-inch exterior walls and insulation with six-inch framing and insulation to comply with what Defendant calls the "energy code"—the International Energy Conservation Code, or IECC.  Defendant, however, does not say whether this code has been adopted by Sherman County or by the State of Kansas.  In fact, it has not been adopted by Sherman County, and Kansas has only adopted the IECC as to "new commercial and industrial structures," not residences.[32]  Riggins admitted at the time of his deposition that he did not know whether the IECC was required to be enforced by Sherman County.   The upshot then is that while Plaintiffs' contractor may have believed certain repairs were required to comply with applicable building codes, he was mistaken as no codes applied to Plaintiffs' residence.  This is not a "loss which consists of, is caused by, or would not have occurred but for" an action "taken by civil, governmental or military authorities . . . to enforce any building codes, ordinances or laws."

---

[32] *See* K.S.A. § 66-1227(a).

Defendant, having failed to meet its burden of showing that the exclusion properly applied, is not entitled to partial summary judgment on this issue.  Further, Plaintiffs are entitled to partial summary judgment that the issue.  Relying on the unambiguous language of the exclusion, narrowly construed against Defendant, as a matter of law and based upon the undisputed facts, the exclusion relied upon by Defendant to partially deny Plaintiffs' claim for the cost of repairs is inapplicable to their situation.

**B.    Plaintiffs' Additional Living Expenses**

Defendant seeks partial summary judgment that Plaintiffs may not recover more than the policy limit of the coverage under Additional Living Expenses, or $27,475, and that Plaintiffs may not recover for expenses they incurred after July 6, 2021, the time limit on the coverage.  Plaintiffs do not controvert that either the coverage limit or time limit under the policy are accurately reflected.  Instead, Plaintiffs contend that Defendant's raise this issue prematurely, and that they should be entitled to present the facts of their case and their alleged losses to the jury.

Plaintiffs will certainly be entitled to present their case to the jury.  They, however, will not be entitled to recover additional living expenses beyond the coverage or time limits contained in their policy.  Plaintiffs point to no reason why, under the policy, they should be able to recover more than $27,475 under Additional Living Expenses or why they should be able to recover for such expenses incurred after July 6, 2021.  Summary judgment is appropriate under these circumstances.[33]

As a matter of law, Plaintiff is not entitled to recover for Additional Living Expenses beyond the coverage limit and incurred later than the time limit contained in the policy.  At trial,

---

[33] *See Strowig Properties, Inc. v. Am. States Ins. Co.*, 32 Kan. App. 2d 7, 80 P.3d 72, 75 (2003) (granting summary judgment to insurer on the ground that the policy limit for debris removal had been fully paid).

Plaintiffs will be permitted to present evidence of their additional living expenses up to July 6, 2021, and Defendant will be permitted to present evidence, uncontroverted at this point, that it has already paid Plaintiffs' $26,702.11 for Plaintiffs' additional living expenses incurred within twelve months of the fire.

**C.      Judicial Estoppel as to Brandon Terry's Claims**

Defendant's final argument in favor of their Motion for Partial Summary Judgment is that Plaintiff Brandon Terry's claims should be barred under the doctrine of judicial estoppel. The doctrine of judicial estoppel protects "the integrity of the judicial process" and "prevent[s] improper use of judicial machinery."[34]  Three factors inform the Court's decision whether to apply the doctrine of judicial estoppel:

> First, a party's subsequent position must be clearly inconsistent with its former position.  Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.[35]

These factors, however, are not inflexible requirements.[36]

Defendant contends that the doctrine of judicial estoppel applies to bar Brandon's claims because in his separate, personal bankruptcy action, he failed to amend his bankruptcy schedule to include the instant lawsuit as an asset of his bankruptcy estate.  The Tenth Circuit has recognized

---

[34] *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).

[35] *Id.* (quoting *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007)).

[36] *Patriot Mfg. LLC v. Hartwig, Inc.*, 996 F. Supp. 2d 1120, 1125 (D. Kan. 2014), *aff'd*, 613 F. App'x 753 (10th Cir. 2015).

that a plaintiff who failed to include a lawsuit as an asset on his bankruptcy schedules may be judicially estopped from bringing that suit.[37]  But generally, such a conclusion is borne out of some "intentional self-contradiction as a means of obtaining an unfair advantage."[38]  In the context of an unamended bankruptcy schedule that omits an ongoing lawsuit, this is an intentional concealment to attempt to gain an unfair advantage over the plaintiff's creditors.[39]

Here, there has been no intentional concealment on Brandon's part.  Within two months of filing his lawsuit, he informed the Chapter 13 Trustee of the litigation.  In doing so, he followed the direction of the bankruptcy court, which had ordered Brandon to "timely report to the Trustee any events affecting disposable income which are not projected on Schedules I and J, including, but not limited to, tax refunds, inheritances, prizes, *lawsuits*, gifts, etc., that are received or receivable during the pendency of the case."[40]  Thus, Brandon has not taken inconsistent positions in his bankruptcy case and in this litigation.  He properly informed the Trustee, in compliance with the bankruptcy court's order, of the ongoing litigation, and the Trustee has entered his appearance in this litigation to monitor it.  The Court will not judicially estop Brandon from pursuing his claims.

---

[37] *See, e.g.*, *Paup v. Gear Prods., Inc.*, 327 F. App'x. 100, 106–08 (10th Cir. 2009); *Ardese v. DCT, Inc.*, 280 F. App'x. 691, 694–97 (10th Cir. 2008); *Eastman*, 493 F.3d at 1157–60.

[38] *Barker v. Asset Acceptance, LLC*, 874 F. Supp. 2d 1062, 1067 (D. Kan. 2012) (quotations omitted).

[39] *See id.* at 1068 ("Plaintiff knew of the facts giving rise to his inconsistent positions and he had motive to conceal the facts to keep this lawsuit out of reach of his creditors.").

[40] Emphasis added.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 68) is **GRANTED**.   Defendant's Motion for Partial Summary Judgment (Doc. 66) is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

Dated this 1st day of November, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE